RODRIGO E. SALAS (SBN 194462)
rsalas@shb.com
JAMES FEENEY (SBN 359511)
jfeeney@shb.com
CASEY J. DOUGLAS (SBN 349623)
cdouglas@shb.com
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281

*For e-service include:* eservice@shb.com

Attorneys for Defendant
GENERAL MOTORS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDGAR I. ORTIZ, an individual,

Plaintiff,

v.

GENERAL MOTORS LLC, a Delaware Limited Liability Company, and DOES 1 -10, inclusive,

Defendants.

Case No. 5:25-cv-01921-MRA-JPR

*Judge: Hon. Monica Ramirez Almadani*

**DEFENDANT GENERAL MOTORS LLC'S OPPOSITION TO MOTION FOR REMAND**

Hearing Date: October 6, 2025
Time: 1:30 PM
Courtroom: 9B

Complaint Filed: March 14, 2025
Removal Filed: July 25, 2025

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND FACTS .......... 5

A. Allegations Relevant to Diversity Jurisdiction .......... 5

B. Allegations Related to Federal Question Jurisdiction .......... 6

C. Plaintiff's Disclosures and Further Investigation .......... 6

D. Preliminary Meeting with Counsel .......... 7

ARGUMENT .......... 7

I. LEGAL STANDARDS .......... 8

II. GM's DEADLINES TO REMOVE UNDER 28 U.S.C. § 1446(b)(1) & (3) HAVE NOT BEEN TRIGGERED AS TO FEDERAL QUESTION .......... 11

A. The *Measure* of Amount in Controversy Under MMWA Is Indeterminate from the Complaint .......... 11

B. The *Values* Necessary to Apply Any Measure Are Indeterminate from the Complaint .......... 13

C. MMWA Remedies Are Not Unequivocally Clear and Certain from the RISC .......... 14

III. GM's DEADLINES TO REMOVE UNDER 28 U.S.C. § 1446(b)(1) & (3) HAVE NOT BEEN TRIGGERED AS TO DIVERSITY JURISDICTION. .......... 15

A. Plaintiff's Citizenship Is Indeterminate from the Complaint and the RISC Did Not Make Plaintiff's Citizenship Unequivocally Clear and Certain .......... 15

B. The $75,000 Amount in Controversy Is Indeterminate from the Complaint and not Unequivocally Clear and Certain from the RISC .......... 16

1. Actual Damages .......... 16

2. Civil Penalties .......... 19

3. Attorney's Fees .......... 19

IV. GM'S NOTICE OF REMOVAL PLAUSIBLY ALLEGED DIVERSITY JURISDICTION .......... 20

V. PLAINTFF'S REQUEST FOR COSTS SHOULD BE DENIED .......... 20

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amavizca v. Nissan N. Am., Inc.*,
No. ED-CV-22-02256-JA-KKK, 2023 WL 3020489 (C.D. Cal. Apr. 19, 2023) ........ 17

*Ansari v. Bella Auto. Group, Inc.*,
145 F.3d 1270 (11th Cir. 1998) ........ 11

*Balaoing v. Nissan N. Am., Inc.*,
Case No. 1:23-cv-00575-ADA-SAB, 2023 WL 4234664 (E.D. Cal. June 28, 2023) ........ 13

*Brady v. Kohl's, Inc.*,
No. LA-CV-2203427-SPG-PD, 2022 WL 4104627 (C.D. Cal. Sept. 7, 2022) ........ 15

*Brinkley v. Monterey Fin. Servs., Inc.*,
No. 16CV1103-WQH, 2016 WL 4886934 (S.D. Cal. Sept. 15, 2016) ........ 16

*Cervantes v. FCA US LLC*,
No. 8-22-CV-02117-DOC-JDE, 2023 WL 1438320 (C.D. Cal. Jan. 31, 2023) ........ 12

*Cioffi v. Solomon*,
No. C-14-04139-RMW, 2014 WL 6679555 (N.D. Cal. Nov. 21, 2014) ........ 15

*Clark v. BMW of N. Am., LLC*,
No. B248593, 2014 WL 3907922 (Cal. App. Aug. 12, 2014) ........ 12

*Conrad v. Toyota Motor Sales, USA, Inc.*,
No. 05-CV-1415 ........ 11

*Crescencio v. Ford Motor Co.*,
No. 2:24-cv-10946-MWF-BFM, 2025 WL 1122096 (C.D. Cal. Apr. 9, 2025) ........ 4, 7, 10, 18

*Crisp-Stoot v. Wal-Mart Stores, Inc.*,
No. CV-18-10694-PSG-PJWX, 2019 WL 1307735 (C.D. Cal. Mar. 22, 2019) ........ 15, 16

*Critney v. Nat'l City Ford, Inc.*,
255 F.Supp.2d 1146 (S.D. Cal. 2003) .......... 11

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014).......... 9, 20

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021) .......... *passim*

*Ehrman v. Cox Communs., Inc.*,
932 F.3d 1223 (9th Cir. 2019) .......... 20

*Fritsch v. Switch Transp. Co. of Az., LLC*,
899 F.3d 785 (9th Cir. 2018) .......... 19, 20

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) .......... 9, 10

*Harris v. Bankers Life & Cas. Co*
425 F.3d 689 (9th Cir. 2005) .......... *passim*

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) .......... 15

*Kelly v. Fleetwood Enters.*,
377 F.3d 1034 (9th Cir. 2004) .......... 6, 11

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
707 F.3d 1136 (9th Cir. 2013) .......... *passim*

*Larios v. Nissan N. Am., Inc.*,
No. 2:25-cv-05095-AJR, 2025 U.S. Dist. LEXIS 160803 .......... 14

*Lussier v. Dollar Tree Stores, Inc.*,
518 F.3d 1062 (9th Cir. 2008) .......... 20, 21

*Makol v. Jaguar Land Rover North America, LLC*,
18-cv-03414, 2018 WL 3194424 (N.D. Cal. June 28, 2018) .......... 19

*Manler v. General Motors LLC*,
Case No. 2:25-cv-06842-ODW(BFMx) (C.D. Cal.), 8/4/25 OSC Order, Dkt. 8 .......... 3, 4

*Marcial Y. Cruz Lopez v. Gen. Motors, LLC, et al.*,
No. CV 25-06549-MWF, 2025 WL 2629545 (C.D. Cal. Sept. 11, 2025) .......... 1

*Misel v. Mazda Motor of Am., Inc.*,
420 F. App'x 272 (4th Cir. 2011) ............ 11

*Morales v. Ford Motor Co.*,
No. 2:23-cv-03590-MCS-SK, 2023 WL 4085976 (C.D. Cal. June 20, 2023) ............ 3, 19

*Muhammad v. Jenkins*,
No. CV 19-7970 JAK (PVC), 2021 WL 10352945 (C.D. Cal. Nov. 19, 2021) ............ 21

*Nathaniel Shane Hays v. General Motors LLC*,
Case No. 2:25-cv-06552-PA-SSC, 2025 U.S. Dist. LEXIS 150181 (C.D. Cal July 31, 2025) ............ 4

*Orichian v. BMW of N. Am., LLC*,
226 Cal. App. 4th 1322 (2014) ............ 11

*Patsy J. Reed v. General Motors LLC*,
Case No. 2:25-cv-07059-RGK-JC (C.D. Cal.), 8/8/25 OSC Order, Dkt. 10 ............ 3

*Picasso v. Ford Motor Co.*,
No. 2:24-cv-10743-MCS-AS, 2025 WL 1722085 (C.D. Cal. Feb. 24, 2025) ............ 18

*Rodriguez v. FCA*,
77 Cal. 5th 189 (2024) ............ 12

*Romo v. FFG Ins. Co.*,
397 F. Supp. 2d 1237 (C.D. Cal. 2005) ............ 12

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
720 F.3d 1121 (9th Cir. 2013) ............ 1, 2, 3, 8

*Royal Canin U.S.A., Inc. v. Wullshleger*,
604 U.S. 22 (2025) ............ 12

*Rozas v. Mercedes-Benz USA, LLC*,
No. 2:24-CV-08417-JLS-AGR, 2025 WL 37691 (C.D. Cal. Jan. 6, 2025) ............ 19

*Scarlott v. Nissan N. Am., Inc.*,
771 F.3d 883 (5th Cir. 2014) ............ 11

*Schneider v. Ford Motor Co.*,
756 F. App'x. 699 (9th Cir. 2018) ........ 14, 17

*Smith v. Mylan Inc.*,
761 F.3d 1042 (9th Cir. 2014) ........ 21

*Stupin v. Gen. Motors LLC*,
No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706 (C.D. Cal. Feb. 27, 2024) ........ 16

*Tandoc v. U.S. Renal Care, Inc.*,
No. 25-cv-2515 ........ 16

*Tutunik v. Mercedes-Benz USA, LLC*,
No. 2:25-CV-01235-JLS-ADS, 2025 WL 1843229 (C.D. Cal. Mar. 28, 2025) ........ 17

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020) ........ 21

*Vasquez v. Nissan N. Am., Inc.*,
No. 2:24-cv-00302-GW-E, 2024 WL 4452776 (C.D. Cal. Mar. 7, 2024) ........ 9

*Villena v. Bloomingdale's, LLC*,
No. 25-CV-0699-BAS-AHG, 2025 WL 2119228 (S.D. Cal. July 29, 2025) ........ 21

*Woods v. Ford Motor Co.*,
No. 5:24-cv-01594-MWF-PVC, 2024 WL 4709973 (C.D. Cal. Nov. 7, 2024) ........ 19

*Yousif v. Jaguar Land Rover N. Am.*,
LLC, No. 3:21-CV-01232-BEN-DTF, 2024 WL 2158244 (S.D. Cal. May 13, 2024) ........ 12

**Statutes**

28 U.S.C. § 1332(a) ........ 15

28 U.S.C. §1441 ........ 1

28 U.S.C. § 1446 ........ 1

28 U.S.C. §1446(b) ........ 1, 8, 9, 11

28 U.S.C. §1446(b)(1) ........ *passim*

28 U.S.C. § 1446(b)(1) & (3) ........ 11, 15

28 U.S.C. §1446(b)(3) ........ *passim*

28 U.S.C. §1447(c) ........ 20

Cal. Civ. Code § 1793.2(d)(2)(B)-(C) ........ 16

Cal. Civ. Code § 1794(c) ........ 12

Cal. Code Civ. Proc. § 871.26(f)(3) ........ 6, 18

Cal. Code Civ. Proc. § 871.27 ........ 5, 17

Cal. Code Civ. Proc. § 871.27(c) ........ 16

Cal. U. Com. Code § 2711, 2712 ........ 12, 13

Magnuson-Moss Warranty Act ........ *passim*

Song-Beverly Act ........ *passim*

**Other Authorities**

California Assembly Bill 1755 ........ 5, 16

## INTRODUCTION

The Ninth Circuit explained there are three potential pathways for removal of an action from state court. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013). The first two pathways are in 28 U.S.C. section 1446(b) and impose 30-day deadlines for removal. *See Dietrich v. Boeing Co*., 14 F.4th 1089, 1093 (9th Cir. 2021). The third pathway is based on reading 28 U.S.C. § 1446 together with 28 U.S.C. section 1441 and permits removal subject to diversity jurisdiction at any time, so long as neither 30-day deadline was triggered. *See Roth*, 720 F.3d at 1125–26; *see also Marcial Y. Cruz Lopez v. Gen. Motors, LLC, et al.*, No. CV 25-06549-MWF, 2025 WL 2629545, at *3 (C.D. Cal. Sept. 11, 2025) (holding with nearly identical complaint that the first two pathways were not triggered and that GM's removal was procedurally proper under the third).

Here, based <u>solely</u> on the complaint, civil cover sheet, and later provided Sales Contract, Plaintiff argues the first or second pathway was triggered more than 30 days before removal, making removal untimely. But Plaintiff's motion fails under a straightforward application of this Circuit's holdings in *Harris v. Bankers Life & Cas. Co* 425 F.3d 689, 697 (9th Cir. 2005) and *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 (9th Cir. 2021). Because the Complaint fails to allege the amount in controversy ("AIC") threshold ($75,000 for diversity and $50,000 for Magnuson Moss Warranty Act ("MMWA")) and Plaintiff's citizenship, subject matter jurisdiction under both federal question and diversity jurisdiction is indeterminate. Therefore, the deadline under 28 U.S.C. section 1446(b)(1) was not triggered. Additionally, under *Dietrich*, a more stringent standard applies when a later document might trigger the 30-day removal window, and Plaintiff's document production did not make the jurisdictional facts unequivocally clear and certain, such that the deadline under 28 U.S.C. section 1446(b)(3) was not triggered. GM's removal was timely.

In 2021, the Ninth Circuit addressed conflicting case law and reinforced a bright line rule to limit collateral litigation on questions of removal jurisdiction after

the filing of an indeterminate complaint by incentivizing plaintiffs to fully plead jurisdictional facts. *Dietrich*, 14 F.4th at 1091. Unless a complaint is determinate as to subject matter jurisdiction on its face, defendant's 30-day deadline to remove is not triggered until plaintiff serves a subsequent paper that on its face makes the basis for removal "unequivocally clear and certain." *Id.* at 1091 ("Thus, to help avoid similar collateral litigation in the future . . . we now adopt a more explicit standard for the second pathway. That pathway's removal clock does not start until a paper makes a ground for removal unequivocally clear and certain."). *Dietrich*'s approach to evaluation of the 28 U.S.C. section 1446(b)(3) trigger reflects a policy determination to apply a stricter second-pathway standard when an earlier complaint is indeterminate.

In the 2007 *Harris* case, the Ninth Circuit first adopted the "bright-line approach" to evaluating whether a removing defendant's time to remove under 28 U.S.C. section 1446(b)(1) had been triggered—holding that the complaint must be unambiguous as to subject matter jurisdiction within its four corners. *Harris v. Bankers Life & Cas. Co* 425 F.3d 689, 697 (9th Cir. 2005). The approach was motivated by multiple policy concerns. **First**, that "objective analysis of the pleadings brings certainty and predictability to the process and avoids gamesmanship in pleading." *Id.* **Second**, to avoid "the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient clue, whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Id.* And **third**, to mitigate the Catch-22 concern that "defendants may be encouraged to engage in premature removals in order to ensure that they do not waive their right to removal." *Id.* Six years later, the Ninth Circuit made clear in two cases that these policy concerns outweighed the risk for delay in removal. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013) ("By leaving the window for removal

open, it forces plaintiffs to assume the costs associated with their own indeterminate pleadings.”).

Unfortunately, the Ninth Circuits’ holdings in *Harris*, *Roth*, *Dietrich*, and *Kuxhausen*, have not been consistently applied and the policy concerns have proven to be near prescient in the warranty context.

Most district courts in this Circuit find that allegations nearly identical to Plaintiff’s are insufficient to satisfy the manufacturer’s burden to establish subject matter jurisdiction on their face, and issue orders to show cause requiring additional proof to be submitted.[1] And a few district courts find that the allegations fail to even *plausibly* establish subject matter jurisdiction—even after manufacturers submit evidence in support.[2] And when manufacturers have expressed concerns arising from such discordant rulings, one court advised patience:

> Defendant and counsel are well aware of the dozens of authorities adverse to their position on the removability of cases in which the amount in controversy is not made clear on the face of the pleadings. Defendant can avoid navigating federal district courts’ discordant treatment of the issue by sheathing the removal sword until the grounds for federal jurisdiction are apparent under any standard applied by district courts in this circuit.

*Morales v. Ford Motor Co.*, No. 2:23-cv-03590-MCS-SK, 2023 WL 4085976, at *4 (C.D. Cal. June 20, 2023).

[1] *Patsy J. Reed v. General Motors LLC*, Case No. 2:25-cv-07059-RGK-JC (C.D. Cal.), 8/8/25 OSC Order, Dkt. 10 (issuing order to show cause to GM as to the amount in controversy in nearly identical complaint).

[2] *Manler v. General Motors LLC*, Case No. 2:25-cv-06842-ODW(BFMx) (C.D. Cal.), 8/4/25 OSC Order, Dkt. 8 (questioning whether court has subject matter jurisdiction as complaint containing nearly identical allegations and notice of removal do not plausibly establish that the amount in controversy exceeds $75,000).

But patience is not without its own peril as other courts reason that complaints like this might be *determinate*.[3] In all, auto manufacturers find themselves in the same Catch-22, which *Harris* and *Dietrich* sought to prevent.[4]

Here, Plaintiff's Complaint is strategically ambiguous as to the jurisdictional facts. Specifically, Plaintiff alleges his residence but not his citizenship. As to the amount in controversy ("AIC"), Plaintiff alleges the model and year of the vehicle,[5] and "remedies" under one or more of three formulas provided by the California Commercial Code, along with Song-Beverly remedies. But Plaintiff does not allege that he seeks more than $50,000 for his federal claim, that he seeks more than $75,000 for his state law claims, nor does he allege the values necessary to make those calculations. And while the later served retail installment sales contract ("RISC") provides some evidence of the AIC, the document does not meet the more stringent "unequivocally clear and certain" standard as to the AIC because the RISC still leaves the measure of their federal claim ambiguous and does not provide information necessary to determine statutorily required offsets.[6]

Applying the bright line rule—mandated by the Ninth Circuit—will force Plaintiff to bear the costs of his indeterminate pleadings and incentivize him to unambiguously plead jurisdictional facts. By keeping the removal window open,

---

[3] *Rojas v. General Motors LLC*, Case No. 2:25-cv-06844-FLA(JCx) (C.D. Cal.), 8/4/25 OSC Order, Dkt. 8 (suggesting nearly identical complaint was determinate as to subject matter jurisdiction and issuing order to show cause as to why removal was timely, on nearly identical complaint).

[4] One court has even issued an order to show cause suggesting that the Complaint is both insufficient to establish, and therefore *indeterminate* as to, subject matter jurisdiction *and also determinate* as to subject matter jurisdiction so as to trigger the deadline to remove under 28 U.S.C. § 1446(b)(1). *See Reed v. General Motors LLC*, Case No. 2:25-cv-06995-FLA-SSC (C.D. Cal.), 8/4/25 OSC Order, Dkt. 8.

[5] *Nathaniel Shane Hays v. General Motors LLC*, Case No. 2:25-cv-06552-PA-SSC, 2025 U.S. Dist. LEXIS 150181, at *8 (C.D. Cal July 31, 2025) (finding vehicle model and year sufficient to be determinate as to the amount in controversy).

[6] *See Crescencio v. Ford Motor Co.*, No. 2:24-cv-10946-MWF-BFM, 2025 WL 1122096, at *6–7 (C.D. Cal. Apr. 9, 2025) (collecting cases finding purchase contract price alone insufficient to establish amount in controversy by preponderance of the evidence).

Plaintiff has incentive to be determinate in his pleadings and, in turn, obviate the need for collateral litigation over both subject matter jurisdiction and the timing of removal.

## BACKGROUND FACTS

On or around March 25, 2024, Plaintiff bought a 2024 Chevrolet Colorado. Compl. (Dkt. 1-1), ¶¶ 6, 9. Plaintiff alleges the vehicle was defective and GM failed to fulfill its warranty obligations. Compl., ¶¶ 12, 14. Plaintiff asserts claims arising under the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act. *See generally* Compl.

### A. Allegations Relevant to Diversity Jurisdiction

Plaintiff's Complaint was filed after the January 1, 2025 operative date of California Assembly Bill 1755. These amendments address, among other things, past ambiguities as to what constitutes "actual damages" under the Song-Beverly Act; for example, past disputes as to whether actual damages includes negative equity have now been resolved. Enacted in California Code of Civil Procedure section 871.27, the amendments that apply to this case now provide the formula for calculating *actual* damages where in addition to identifying and deducting a mileage offset, the following items are also deducted from the paid and payable: negative equity; rebates; non-dealer supplied third party equipment or services; and unpaid financing and interest.

Plaintiff's complaint alleges the make, model and year of the subject vehicle, but does not allege the purchase price, nor any other dollar amounts for statutorily required deductions. The mileage offset calculation is specifically obscured because Plaintiff makes a generic "including but not limited to" defect allegation (Compl., ¶ 12), creating ambiguity as to which repair presentations, if identified by Plaintiff, would be relevant, leaving GM to decipher a trail of clues.

Plaintiff also seeks a civil penalty of up to two times *actual* damages under the Song-Beverly Act. Compl., ¶ 17. But Plaintiff does not quantify "actual" damages or the amount of civil penalties damages sought.

As to citizenship, Plaintiff allege he is a resident (but not citizen) of California. Compl., ¶ 2.

**B. Allegations Related to Federal Question Jurisdiction**

Plaintiff also pled a MMWA claim as his Fifth Cause of Action.[7] Compl., ¶¶ 34–44. Because civil penalties are not recoverable under this cause of action, Plaintiff seeks benefit of the bargain type damages along with fees and costs, specifying in the Prayer the remedies authorized under Commercial Code sections "2711, 2712, and/or 2713". Compl., at 6 (Prayer for Relief). Plaintiff does not specify which measure of damages he seeks under the Commercial Code. And, as with Plaintiff's Song-Beverly claims, not a single dollar amount was identified with respect to the MMWA claims within the Complaint. Consistent with these indeterminate allegations, the Complaint does not mention MMWA's $50,000 AIC (nor does the Motion).

**C. Plaintiff's Disclosures and Further Investigation**

On June 16, 2025, Plaintiff served initial disclosures pursuant to § 871.26. These disclosures contained, *inter alia*, the RISC and some repair orders. Declaration of Casey Douglas ("Douglas Decl."), ¶ 2. But the disclosures do not identify which repair presentations were relevant for purposes of determining the applicable mileage offset, nor did Plaintiff certify that all repair records had been provided. Douglas Decl., ¶ 3, Ex. A (June 16, 2025 Meet and Confer Letter). Moreover, the disclosures were incomplete because they were missing, *inter alia*, payoff history for the vehicle as required under Code of Civil Procedure section 871.26(f)(3). Douglas Decl., ¶ 4. It was not until July 27, 2025, that Plaintiff made a supplemental production

[7] MMWA carries a $50,000 amount in controversy prerequisite. *Kelly v. Fleetwood Enters.*, 377 F.3d 1034, 1037 (9th Cir. 2004).

providing a loan payment history and certifying the initial disclosures were in "full compliance." Douglas Decl., ¶ 5, Ex. B (July 27, 2025 Email).

### D. Preliminary Meeting with Counsel

On July 17, 2025, GM's counsel received a settlement proposal for all Prestige Legal Services' GM cases. The uniform per case settlement proposal made clear that the cases would not resolve early. Separately, there was investigation into Plaintiff's claims. This included analysis of various vehicle documents, beyond just the RISC, to extrapolate information necessary to estimate statutorily required offsets under the amended Song-Beverly Act and determine actual damages to ascertain whether the jurisdictional threshold was met. And as stated in the Notice of Removal, once it became clear that this matter would not resolve early, significant future attorney's fees could be reasonably included in the amount in controversy.

Removal of this case proceeded and, soon after, Plaintiff's counsel requested to meet and confer based solely on their argument that the service of the Complaint had triggered the 30-day removal deadline. Since then, counsel has adjusted his position to separately argue that service of the RISC containing the purchase price—but not "actual" damages—gave GM "plausible" grounds to remove, ignoring the "unequivocally clear and certain" standard under *Dietrich*. Plaintiff also ignores the mass of authority holding that the purchase price is insufficient to prove subject matter jurisdiction, even by the lesser "preponderance of the evidence" standard.[8] More notably, Plaintiff ignored the actual damages formula and caselaw GM set out in detail in its notice of removal and should not raise new arguments on reply that they should have raised as part of their burden in their opening brief.

## ARGUMENT

As a threshold matter, Plaintiff confuses the plausibility standard by which a notice of removal is assessed with the standard to trigger either 30-day deadline under

[8] *See Crescencio*, 2025 WL 1122096, at *6–7 (collecting cases finding purchase price alone insufficient to establish AIC by preponderance of the evidence).

28 U.S.C. section 1446(b). Indeed, Plaintiff's argument ignores the legal standards articulated in *Harris* and *Dietrich*—providing that a complaint or other paper does not trigger a defendant's deadline to remove under 28 U.S.C. section 1446(b) unless that paper makes subject matter jurisdiction "unequivocally clear and certain." *Dietrich*, 14 F.4th at 1095. In turn, Plaintiff improperly equates facts that *may* allow removal with facts sufficient to *require* removal. *Dietrich*, 14 F.4th at 1094 (reversing remand order where "the district court equat[ed] facts sufficient to allow removal with facts sufficient to *require* removal within thirty days.").

Under a straightforward application of *Harris* and *Dietrich*, the Complaint did not trigger the 30-day deadline to remove under 28 U.S.C. section 1446(b)(1). Nor did Plaintiff serve an "other paper" that triggered the deadline to remove under 28 U.S.C. section 1446(b)(3). Therefore, removal is timely because GM removed based on its own investigation.

## I. LEGAL STANDARDS

There are two potential 30-day deadlines for removal. The first is triggered by a complaint that "'affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Harris*, 425 F.3d at 691 (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *see also* 28 U.S.C. § 1446(b)(1). The second is triggered by an amended pleading or an "other paper" that makes the jurisdictional facts "unequivocally clear and certain." *Dietrich*, 14 F.4th at 1095.

In interpreting whether a Complaint or "other paper" triggers a 30-day deadline, the Ninth Circuit has adopted a "bright-line approach," to ensure "certainty and predictability." *Harris*, 425 F.3d at 697; *Dietrich*, 14 F.4th at 1094.

The Ninth Circuit added two additional points in *Roth*. First, the triggering "other paper" must be served by Plaintiff. *Roth*, 720 F.3d at 1126. Second, if neither 30-day deadline is triggered, then they are irrelevant to the timeliness of removal. *Roth*, 720 F.3d at 1125 (holding that defendant is permitted to "remove outside the two thirty-day periods on the basis of its own information, provided that it has not

run afoul of either of the thirty-day deadlines."). In other words, Plaintiff's position that GM must point to an "other paper" to support timeliness is wrong. *See* Mot. Remand at 7.

Plaintiff is also wrong to equate the standard for evaluating a notice of removal under *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014), with the standard to trigger the 30-day deadlines under 28 U.S.C. section 1446(b). The later standard is distinct from—and more demanding than—the standard of proof imposed on a removing defendant. *Kuxhausen*, 707 F.3d at 1141, n.3 (emphasis added) ("Whether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins **are not two sides of the same coin**."); *see also Vasquez v. Nissan N. Am., Inc.*, No. 2:24-cv-00302-GW-E, 2024 WL 4452776 at *2 (C.D. Cal. Mar. 7, 2024).

Specifically, the "unequivocally clear and certain" standard is more demanding than the "preponderance of the evidence" standard that a removing defendant must meet in response to a factual challenge to removal. The Ninth Circuit has held that the burden on a removing defendant to prove subject matter jurisdiction is "preponderance of the evidence" when the Complaint is indeterminate, as distinguished from "legal certainty." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699–700 (9th Cir. 2007).

In sum, the holdings in *Dart Cherokee*, *Harris*, *Dietrich*, and *Guglielmino*, lead to two relevant conclusions.

**First**, a defendant *may* remove before he is under a duty to do so because, while an ambiguous complaint or other paper may allow for "plausible" allegations as to subject matter jurisdiction, if the plausible allegations are challenged, defendant will have the burden to produce evidence to avoid remand. *See Dietrich*, 14 F.4th at 1094 ("[W]e concluded that a defendant *may* remove before it *must* do so."). Thus, a paper that provides *evidence* of jurisdiction but is not *determinate* of same, may provide a *basis* to remove while at the same time being *insufficient* to trigger a

deadline to remove. To hold otherwise would impose a duty to investigate, inquiry notice, or subjective knowledge considerations, all which *Dietrich* firmly rejected.

**Second**, the duty to remove is only triggered if the plaintiff serves a document that effectively places defendant in *Guglielmino* scenario one. In other words, a complaint (or other paper) only triggers the duty to remove if the document itself relieves defendant of any burden of production. Otherwise, a removing defendant would be in a Catch-22—forced to remove a case when its ability to satisfy a challenge to subject matter jurisdiction is uncertain. *Harris*, 425 F.3d at 697 (explaining bright line rule is intended to avoid "premature removals"); *Crescencio v. Ford Motor Co.*, No. 2:24-cv-10946-MWF-BFM, 2025 WL 1122096, at *3–4 (C.D. Cal. Apr. 9, 2025) ("By leaving the window for removal open, it forces plaintiffs to assume the costs associated with their own indeterminate pleadings. That is only fair after all, because . . . 'the burden is on the party removing the case from state court to show the exercise of federal jurisdiction is appropriate.'"). For application of these principles, the facts in *Dietrich* are instructive.

In *Dietrich*, the Ninth Circuit held that Boeing's duty to remove under federal question was triggered by a specific discovery response that clearly and unequivocally admitted that the claims were related to military service. *Dietrich*, 14 F.4th at 1095. On the other hand, Boeing's duty to remove *was not triggered* by a set of facts from which Boeing could have connected the dots and drawn a reasonable inference that the claims were related to plaintiff's military service. *Id.* at 1095. Accordingly, *Dietrich* stands for the proposition that a paper containing evidence to establish subject matter jurisdiction by a preponderance of the evidence is not necessarily sufficient to trigger a duty to remove, where the removing defendant is required to analyze and interpret evidence susceptible of multiple interpretations. This is particularly true in the context of the "other paper" deadline at issue here. *Id.* at 109.

## II. GM's DEADLINES TO REMOVE UNDER 28 U.S.C. § 1446(b)(1) & (3) HAVE NOT BEEN TRIGGERED AS TO FEDERAL QUESTION

The MMWA carries a federal question jurisdictional threshold AIC of $50,000. *Kelly v. Fleetwood Enters.*, 377 F.3d 1034, 1037 (9th Cir. 2004). The 30-day deadlines under 28 U.S.C. section 1446(b) are only triggered with respect to federal question jurisdiction if the Complaint is determinate or an "other paper" served by Plaintiff makes it unequivocally clear and certain that more than $50,000 is in controversy.

### A. The *Measure* of Amount in Controversy Under MMWA Is Indeterminate from the Complaint

As a threshold matter, there is uncertainty how district courts in this Circuit evaluate the AIC under MMWA. Most courts reasoned that MMWA should be interpreted strictly "to avoid trivial or insignificant actions" and does not include remedies available under the Song-Beverly Act, such as civil penalties. *See Critney v. Nat'l City Ford, Inc.*, 255 F.Supp.2d 1146, 1148 (S.D. Cal. 2003)[9] (finding MMWA removal relying on pendant state law claims, including the Song-Beverly Act, "improvident" such that an award of attorney's fees against removing defendant was proper);[10] *see also Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1331–32 (2014) (holding court erred in not instructing on both Song-Beverly and Magnuson-Moss because these are different statutes with different elements and burdens of proof; interpreting Magnuson-Moss claim as based on state Commercial

---

[9] Other Circuits are in accord with the majority view in this Circuit that only damages available under Magnuson-Moss may be considered for federal question jurisdiction. *See, e.g.*, *Misel v. Mazda Motor of Am., Inc.*, 420 F. App'x 272, 274 (4th Cir. 2011); *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887–88 (5th Cir. 2014); *Ansari v. Bella Auto. Group, Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998).

[10] While *Critney* does not specifically discuss pendant state claims, the complaint there stated claims and remedies (including civil penalties) under the Song Beverly Act. *Critney*, No. 3:03-cv-00239-B-AJB (S.D. Cal.), Dkt. 1 (Notice of Removal) at pp. 45-46. *See also Conrad v. Toyota Motor Sales, USA, Inc.*, No. 05-CV-1415 BEN(AJB), 2005 WL 8173418, at *2 (S.D. Cal. Sept. 23, 2005) (MMWA AIC does not include damages such as civil penalties flowing from the pendent state law claims).

Code). By contrast, some district courts rely on an older (incorrect) case holding that MMWA damages in a used car case should include civil penalties. *See, e.g.*, *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005).[11]

In light of such uncertainty—and the possibility of an award of attorney's fees—GM would be in an *ex-ante* Catch-22 if ambiguous allegations for damages like Plaintiff's are held to be determinate as to the $50,000 amount in controversy under MMWA *post-hoc*. *See Harris*, 425 F.3d at 697 (explaining bright line rule is motivated by concern "defendants will be subject to a court's post-hoc consideration of whether there was a 'clue' in the initial pleading and whether the defendant exercised due diligence to discover the grounds for removability" which may pressure defendants "to file a premature notice of removal"). Furthermore, the Supreme Court further undermined the approach in *Romo* by drawing a firm line between federal and state claims for purposes of establishing federal question jurisdiction. *Royal Canin U.S.A., Inc. v. Wullshleger*, 604 U.S. 22, 34 (2025).

Moreover, Plaintiff's Complaint **specifically delineates** two different approaches to damages: one applicable solely to their Song-Beverly Act claims and one applicable solely to their MMWA claims. With Song-Beverly, he seeks cancellation of the contract and "a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c)." Compl., ¶¶ 17, 23–24, 28, and Prayer for Relief (c). In comparison, he only seeks the "benefits of the bargain" and "remedies authorized by California Commercial Code sections 2711, 2712, and/or

---

[11] *Romo* indicated that civil penalties would be available for MMWA used car cases, but that has been undercut. *See, e.g., Scott*, 443 F. Supp. 3d at 1150–51; *Yousif v. Jaguar Land Rover N. Am.*, LLC, No. 3:21-CV-01232-BEN-DTF, 2024 WL 2158244, at *3 (S.D. Cal. May 13, 2024) ("The Court finds the reasoning outlined in *Jayco* more persuasive and applicable to the instant case than that in *Romo*."); *Clark v. BMW of N. Am., LLC*, No. B248593, 2014 WL 3907922, at *8–9 (Cal. App. Aug. 12, 2014) (citing *Orichian* for notion that Magnuson Moss remedies are under the California UCC). **Further, it is now blackletter law in California that a buyer cannot get Song Beverly civil penalties for a used car purchase**. *Rodriguez v. FCA*, 77 Cal. 5th 189 (2024). Notably, even the *Romo* court no longer follows its approach on automatically considering penalties. *Cervantes v. FCA US LLC*, No. 8-22-CV-02117-DOC-JDE, 2023 WL 1438320, at *3 (C.D. Cal. Jan. 31, 2023).

2713" with respect to his MMWA claims. Compl., at 6 (Prayer for Relief (e)). And casting still further ambiguity over how the MMWA claims should be measured, Plaintiff does not make clear which formula—sections 2711, 2712, and/or 2713—he seeks recovery under.[12]

Plaintiff's Complaint clarifies he is only seeking Commercial Code remedies for his MMWA claim. Moreover, as discussed above, caselaw makes clear that pendant state claims, like the Song-Beverly claims, may not be aggregated to meet the MMWA AIC. At any rate, given the discordant authority as to whether the Song-Beverly damages may be aggregated to meet the MMWA threshold, it would place GM in a Catch-22 to hold the Complaint is determinate *ex ante*.

### B. The *Values* Necessary to Apply Any Measure Are Indeterminate from the Complaint

Even assuming the *measure* of Plaintiff's damages is determinate from the Complaint, the Complaint still did not trigger the deadline to remove under 28 U.S.C. section 1446(b)(1). This is because Plaintiff failed to plead the *values* necessary to establish the $50,000 AIC is unequivocally clear and certain. Indeed, Plaintiff does not specify any specific dollar amounts with respect to his vehicle. And Plaintiff's argument that the civil cover sheet admits he seeks more than $35,000 has been uniformly rejected. *See, e.g., Balaoing v. Nissan N. Am., Inc.*, Case No. 1:23-cv-00575-ADA-SAB, 2023 WL 4234664, *5, n.3 (E.D. Cal. June 28, 2023), adopted at 2023 WL 5635999 (E.D. Cal. Aug. 31, 2023) (compiling cases rejecting same argument). Plaintiff's argument that "Defendant's sophistication in the market valuation of the vehicles it manufactures and sells" has also been rejected in *Kuxhausen*. Mot. Remand at 7. In *Kuxhausen* the Ninth Circuit made clear that the

[12] Cal. U. Com. Code § 2711 includes a potential recovery for so much of the price as has been paid; § 2712 allows recovery for between the cost of cover and the contract price together with any incidental or consequential damages, and § 2713 (which appears to be what Plaintiff seeks) allows recovery for "the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages" *i.e.*, benefit of the bargain.

district court erred in remanding because "lurking in the district court's analysis was an implicit premise not furnished by the complaint"—that defendant should have known "German luxury automobiles" were worth at least $25,000. *Kuxhausen*, 707 F.3d at 1140. Simply put, GM's subjective knowledge of the value of the vehicles it manufactures is irrelevant. Therefore, the Complaint did not trigger the 30-day deadline under 28 U.S.C. section 1446(b)(1) as to federal question.[13]

### C. MMWA Remedies Are Not Unequivocally Clear and Certain from the RISC

Further, service of the RISC did not trigger the 30-day deadline under 28 U.S.C. section 1446(b)(3) as to federal question. *Dietrich*, at 1091 (holding "removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'"); *Larios v. Nissan N. Am., Inc.*, No. 2:25-cv-05095-AJR, 2025 U.S. Dist. LEXIS 160803, at *11 ("[T]he requirement for the second pathway for the basis for removal to be ascertained requires a greater level of certainty than the requirement for the basis for removal to be set forth in the initial complaint under the first pathway."). Specifically, while the RISC provides the purchase price, it is not "unequivocally clear and certain" as to other necessary values to calculate damages under the Commercial Code. *Schneider v. Ford Motor Co.*, 756 F. App'x. 699, 701, n.3 (9th Cir. 2018).

First, the RISC does not specify which formula under the Commercial Code should apply. Second, the RISC does not state the relevant market value Plaintiff will argue for purposes of the damages formula under sections 2712 and 2713. Third, the RISC is silent on the amount Plaintiff actually paid on the financing agreement, required under sections 2711, 2712, and 2713. Plaintiff did not provide loan payment information until July 27, 2025, with his supplemental production. Douglas Decl. ¶

[13] The RISC provides no additional certainty as to what measure of damages Plaintiff seeks for his MMWA claim.

5. Therefore, no matter what *measure* of damages is sought under the Commercial Code, the necessary *values* to apply those measures were not provided with the RISC.

In sum, service of the RISC did not trigger GM's duty to remove under 28 U.S.C. section 1446(b)(3) based on federal question.

## III. GM's DEADLINES TO REMOVE UNDER 28 U.S.C. § 1446(b)(1) & (3) HAVE NOT BEEN TRIGGERED AS TO DIVERSITY JURISDICTION

Generally, a court has diversity jurisdiction only when there is complete diversity of citizenship among adverse parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

### A. Plaintiff's Citizenship Is Indeterminate from the Complaint and the RISC Did Not Make Plaintiff's Citizenship Unequivocally Clear and Certain

"A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.* (citizenship not established by allegations of residence); *Harris*, 524 F.3d at 695–96 (complaint did not reveal citizenship as of the filing of the complaint.").

While district courts differ on whether residency allegations are sufficient to trigger the 30-day window when all other jurisdictional facts are present in the complaint, GM notes Judge Philip Gutierrez's thorough analysis, holding Circuit precedent requires more than residency to be alleged, and that decisions ruling otherwise primarily traced their roots to out of circuit authority. *Crisp-Stoot v. Wal-Mart Stores, Inc.*, No. CV-18-10694-PSG-PJWX, 2019 WL 1307735, at *2–4 (C.D. Cal. Mar. 22, 2019). Numerous other district courts have similarly applied Circuit precedent to find the 30-day removal window is not triggered by residency allegations. *See, e.g., Brady v. Kohl's, Inc.*, No. LA-CV-2203427-SPG-PD, 2022 WL 4104627, at *2 (C.D. Cal. Sept. 7, 2022) *Cioffi v. Solomon*, No. C-14-04139-RMW,

2014 WL 6679555, at *2 (N.D. Cal. Nov. 21, 2014); *Tandoc v. U.S. Renal Care, Inc.*, No. 25-cv-2515 PA-AJRX, 2025 WL 1397193, at *3 (C.D. Cal. May 14, 2025); *Brinkley v. Monterey Fin. Servs., Inc.*, No. 16CV1103-WQH, 2016 WL 4886934, at *3 (S.D. Cal. Sept. 15, 2016).

Here, Plaintiff's Complaint states his residency in California but is silent on Plaintiff's intent to remain and his California citizenship. Compl., ¶ 2. Accordingly, the Complaint was indeterminate as to complete diversity of citizenship and did not trigger the 30-day deadline to remove. *Crisp-Stoot*, 2019 WL 1307735, at *3.

**B. The $75,000 Amount in Controversy Is Indeterminate from the Complaint and not Unequivocally Clear and Certain from the RISC**

For his state law claims, Plaintiff seeks three categories of damages: (1) actual damages, (2) a civil penalty of up to two times actual damages, and (3) attorney's fees. Compl., at 6 (Prayer for Relief).

**1. Actual Damages**

Actual damages under the Song Beverly Act requires a deduction of the value "directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). The mileage offset is derived by determining the first *relevant* repair, then taking the number of miles driven before that, dividing by 120,000 and multiplying that figure by the cash price of the vehicle. *See Stupin v. Gen. Motors LLC*, No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706, at *2 (C.D. Cal. Feb. 27, 2024) ("Neither party has provided sufficient information for the Court to use the [mileage offset] formula included in the Song-Beverly Act to apply the Act's reduction.").

Further, this case was filed after January 1, 2025. It falls under the Song Beverly amendments (California Assembly Bill 1755), which expanded the mandatory formula for actual damages in the Song-Beverly context. Accordingly, in addition to GM having to assess and deduct the mileage offset, *Schneider*'s reasoning requires that the following be considered in the AIC calculus: negative equity (Cal. Code Civ. Proc. section 871.27(c)), manufacturer's rebate (*id.*, section 871.27(d)),

any third party sold optional equipment (*id.*, section 871.27(b)), and unpaid financing (*id.*, section 871.26(f)).

GM acknowledges a minority of district courts applied a more liberal approach and do not consider offsets when assessing the AIC based on the position that the offsets are defenses—but under the current statutory scheme, these are not defenses but rather the formula to determine actual damages. *See Amavizca v. Nissan N. Am., Inc.*, No. ED-CV-22-02256-JA-KKK, 2023 WL 3020489, at *5 (C.D. Cal. Apr. 19, 2023) (noting split in courts, discussing Ninth Circuit authority requiring deductions, and noting Song Beverly mileage offsets must be considered because it is *not* a defense, but is instead "part of the formula provided in Cal. Civ. Code § 1793.2 for the computation of damages.").[14] Two reasons support even those minority of courts to agree with GM here: as set forth above, this case falls under the **new** Song Beverly scheme and Plaintiff's Complaint specifically seeks "actual" damages under the Song-Beverly Act, meaning the paid and payable *minus* offsets. *See Tutunik v. Mercedes-Benz USA, LLC*, No. 2:25-CV-01235-JLS-ADS, 2025 WL 1843229, at *2 (C.D. Cal. Mar. 28, 2025) (where specific rule of law like mileage offset limits the amount of damages recoverable, it must be considered to determine "actual" damages).

With this in mind, GM took the conservative position—dictated by *Schneider*—that it investigated statutorily required offsets reflected in vehicle documents like repair orders, RISC, and payoff history, to calculate actual damages before removal to ensure compliance with any standard applied by district courts in this state.

Here, the Complaint is indeterminate as to actual damages because it does not provide any values from which actual damages can be calculated. *See, supra*,

[14] The complaint in *Amavisca* was filed before January 1, 2025 and therefore, before the amendments to the Song-Beverly damages formula in section 871.27 took effect— requiring additional statutory deductions discussed above, beyond the mileage offset.

Section II.A.2. Therefore, the Complaint did not trigger the deadline to remove under 28 U.S.C. section 1446(b)(1).

Furthermore, the RISC is not unequivocally clear and certain as to actual damages because it only provides the purchase price—not the value of other necessary offsets. *See Crescencio*, 2025 WL 1122096, at *6–9 (finding complaint indeterminate as to AIC where "Complaint contained only an approximate value of the Subject Vehicle without providing any information as to the total cash price . . . or any information from which the mileage use offset can be determined.").[15]

First, the RISC does not identify what the mileage offset should be, and even if Plaintiff had produced all other necessary information to arguably allow connecting the dots, they do not state which presentation is the first relevant presentation for purposes of applying the mileage offset formula. GM's ability to ascertain which presentation was the first presentation relevant for purposes of calculating the mileage offset is further obscured because Plaintiff does not strictly define the alleged defect in the Complaint. Compl., ¶ 12. Instead, Plaintiff includes a catch-all allegation, creating inherent ambiguity with respect to identifying which presentations, if any, are relevant to the mileage offset. *Ibid.*

Second, the RISC does not make the value of unpaid financing unequivocally clear and certain. *See Picasso v. Ford Motor Co.*, No. 2:24-cv-10743-MCS-AS, 2025 WL 1722085, at *2 (C.D. Cal. Feb. 24, 2025) ("[T]he total sale price does not provide an appropriate starting point for the estimate of actual damages . . . Defendant does not provide an estimate of the finance charges Plaintiff has paid thus far."). In light of the recently enacted sections 871.26 and 871.27, this value is now part of the actual damages formula. For this reason, section 871.26 requires Plaintiff to produce actual loan payment history within 60 days of the answer. Cal. Code Civ. Proc. § 871.26(f)(3). Plaintiff had not done so. Therefore, the document production did not make actual damages under the Song-Beverly Act unequivocally clear and certain.

[15] *Crescencio* also involved a pre-January 1, 2025 complaint. *See supra*, n. 17.

Therefore, the RISC did not trigger the deadline to remove under 28 U.S.C. section 1446(b)(3).

**2. Civil Penalties**

Because the amount of actual damages is indeterminate, so too is the amount for maximum civil penalties sought under Song-Beverly. *See, e.g.*, *Woods v. Ford Motor Co.*, No. 5:24-cv-01594-MWF-PVC (PVCx), 2024 WL 4709973, at *2 (C.D. Cal. Nov. 7, 2024); *Rozas v. Mercedes-Benz USA, LLC*, No. 2:24-CV-08417-JLS-AGR, 2025 WL 37691, at *3 (C.D. Cal. Jan. 6, 2025) ("Because the amount of actual damages is speculative, any attempt to determine the civil penalty is equally uncertain.").

GM also acknowledges district courts' discordant treatment of civil penalties—some requiring a showing beyond the boiler plate allegations before *any* civil penalties can be included in the AIC. *See Makol v. Jaguar Land Rover North America, LLC*, 18-cv-03414, 2018 WL 3194424, at *2 (N.D. Cal. June 28, 2018).

The district courts' discordant treatment of civil penalties *post hoc* raises yet another layer of uncertainty to GM's removal *ex ante*. *See Morales*, 2023 WL 4085976, at *4. Even though GM's position is that once actual damages are calculated, the maximum resulting civil penalties should be included in the AIC for Song-Beverly damages, it is far from "unequivocally clear and certain" that they will be in all courts in this district.

**3. Attorney's Fees**

Finally, Plaintiff seeks attorney's fees, which may be included in the AIC, *Fritsch v. Switch Transp. Co. of Az., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), but Plaintiff does not allege value for such fees. Within 30 days of removal, the parties conferred and determined settlement was unlikely, so GM may reasonably include future attorney's fees to meaningfully surpass the AIC threshold.

## IV. GM'S NOTICE OF REMOVAL PLAUSIBLY ALLEGED DIVERSITY JURISDICTION

GM's notice of removal is otherwise facially proper.

As to citizenship, GM cited information obtained through investigation supporting Plaintiff's California citizenship. Not. of Removal at 3–4. Further, GM alleged that it is a Delaware LLC with its sole member corporation, General Motors Company, also being a Delaware entity with its principal place of business in Michigan. Therefore, GM is a citizen of Delaware and Michigan. *Ibid.*

As to the AIC, GM alleged a non-speculative estimate of $59,043.62 in actual damages, after estimating offsets. Not. Removal at 5. Then, GM applied civil penalties and attorneys' fees accrued as of the date of removal, including future attorney's fees. *Id.* 5–6. Therefore, GM satisfied its burden to plead that the AIC exceeds $75,000, sufficient to establish a plausible basis for diversity jurisdiction. *Dart Cherokee*, 574 U.S. at 88–89.

Moreover, GM need not present further evidence of subject matter jurisdiction because Plaintiff's motion to remand asserted a facial challenge to the legal adequacy of GM's removal, but did not challenge the truth of GM's jurisdictional allegations. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019).

Beyond not questioning GM's jurisdictional allegations, Plaintiff also admits the jurisdictional facts at issue regarding both citizenship and that they seek more than the jurisdictional amount, which confirms subject matter jurisdiction exists.

## V. PLAINTFF'S REQUEST FOR COSTS SHOULD BE DENIED

Plaintiff seeks fees under 28 U.S.C. section 1447(c) arguing that removal was objectively unreasonable based solely on timeliness because it was more than 30 days after "personal service of the complaint." *See* Mot. Remand at 9. But even if Plaintiff was correct (and he is not), "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d

1062, 1065 (9th Cir. 2008). "Rather, the court should assess 'whether the relevant case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the law at the time of removal.'" *Lussier*, 518 F.3d 1066. And even then, it remains discretionary.

Here, GM's argument that the complaint was indeterminate is consistent with Circuit precedent. As to the second 30-day pathway following GM's investigation, Plaintiff's motion does not address the actual damages determinations and caselaw raised in GM's Notice of Removal, instead relying *solely* on the RISC—an argument that the majority of cases addressing have agreed does not establish subject matter jurisdiction nor trigger the deadline to remove.[16] Even the minority of cases that might support Plaintiff's argument on the RISC recognize that "actual" damages includes offsets, and Plaintiff specifically here pleaded for "actual" damages.

Accordingly, even if this Court grants Plaintiff's motion, it should not award costs because GM's position is, at worst, based on a good faith interpretation of Ninth Circuit authority. *See generally Villena v. Bloomingdale's, LLC*, No. 25-CV-0699-BAS-AHG, 2025 WL 2119228, at *15–18 (S.D. Cal. July 29, 2025).[17]

## **CONCLUSION**

Plaintiff's motion to remand should be denied.

/ / /

/ / /

/ / /

---

[16] Plaintiff routinely raises new arguments he should have raised in opening briefs on reply and preclude GM any fulsome response. They should be precluded from raising new arguments or evidence on reply. *Muhammad v. Jenkins*, No. CV 19-7970 JAK (PVC), 2021 WL 10352945, at *1 (C.D. Cal. Nov. 19, 2021); *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (court would "decide only questions presented by the parties"); *Smith v. Mylan Inc*., 761 F.3d 1042, 1045 (9th Cir. 2014) (procedural defects must be raised in timely motion to remand).

[17] Ms. Yang states that she worked on and drafted Plaintiff's motion to remand and seeks recovery for her time. GM reserves the challenge to the asserted time and amount given that Plaintiff has not provided any supporting records for time on near identical motions.

Dated: September 15, 2025

SHOOK, HARDY & BACON L.L.P.

By: */s/ Casey J. Douglas*
Rodrigo E. Salas
James Feeney
Casey J. Douglas

Attorneys for Defendant
GENERAL MOTORS LLC

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant General Motors LLC, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Casey J. Douglas*
Casey J. Douglas

Attorney for Defendant
GENERAL MOTORS LLC